Eric D. SMITH, Appellant–Plaintiff,

v.

INDIANA DEPARTMENT OF CORRECTION, et al., Appellees–Defendants.

No. 49A02–0601–CV–58.

Court of Appeals of Indiana.

Aug. 23, 2006.

Eric D. Smith, Westville, IN, Pro Se Appellant.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, J. Michael Sauer, Deputy Public Defenders, Indianapolis, IN, Amicus Curiae Public Defender of Indiana.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

J. Scott Callahan, Bedford, IN, Stephen J. Johnson, Indianapolis, IN, Amicus Curiae of Indiana Prosecuting Attorneys Council.

## OPINION

VAIDIK, Judge.

### Case Summary

Eric D. Smith, an inmate at the Maximum Control Facility at Westville Correctional Center, appeals the trial court's dismissal of his complaint pursuant to Indiana Code § 34–58–2–1, which provides that if an offender has filed at least three civil actions in which a state court has dismissed the action or a claim under Indiana Code § 34–58–1–2, the offender may not file a new complaint or petition unless a court determines that he is in immediate danger of serious bodily injury. Specifically, Smith contends that Indiana Code § 34–58–2–1 violates the Open Courts and Privileges and Immunities Clauses of the Indiana Constitution because it restricts offenders' access to the courts. In this issue of first impression, we conclude that Indiana Code § 34–58–2–1 is constitutional and therefore affirm the dismissal of Smith's complaint.[1]

### Facts and Procedural History

On November 7, 2005, Smith filed a Complaint for Damages in Marion Superior Court against the Indiana Department of Correction ("DOC"), the Maximum Control Facility, and DOC employees Ed Buss, Pam Bane, George Payne, J. Shreaves, Ms. Zschoche, and Stephen J. Huckins (collectively "the defendants"). Smith alleged that while incarcerated at the Maximum Control Facility, the defendants refused to provide him with copies of legal materials. Smith said that as a re-

sult, he "was forced to take direct action" on June 23, 2005. Appellant's App. p. 12. Specifically, Smith set up a hammock approximately twenty feet in the air in the prison's recreation room by tying a bed sheet to some water pipes and refused to come down until the defendants copied his legal materials. Smith

> left the guards a note, explaining that he needed and wanted his copies and would peacefully come down if he could get them and threatened that he would hurt anyone attempting to grab him down from the bedsheet and that he was willing to die in order to get his copies, because without the copies he wouldn't be able to get out of prison for his wrongful arson conviction.

*Id.* at 14. Officers had to use chemical spray and pepper balls to force Smith down, which Smith alleges caused him injury and pain. Smith sought $300,000.00 in damages from the defendants as well as injunctive and declaratory relief.

On December 15, 2005, the defendants filed a motion to dismiss. In that motion, the defendants asserted that on November 2, 2005—five days before Smith filed his complaint in this case—the LaPorte Superior Court issued an order in another one of Smith's lawsuits that pursuant to Indiana Code § 34–58–2–1, Smith may not file a new complaint or petition without the court first determining that he is in immediate danger of serious bodily injury. The case to which the State referred in its motion to dismiss is *Smith v. Maximum Control Facility*, 850 N.E.2d 476 (Ind.Ct. App.2006), in which we issued an opinion on July 13, 2006. In that case, the LaPorte Superior Court ordered that because it was the third civil action in which a

---

1. We hereby deny Smith's May 10, 2006, Verified Motion to Permit Deviation from the Rules.

court found that Smith's claim may not proceed pursuant to Indiana Code § 34–58–1–2, he may not file a new complaint or petition without the court first determining that he is in immediate danger of serious bodily injury. In accordance with the La-Porte Superior Court's order in *Smith v. Maximum Control Facility*, on December 16, 2005, the Marion Superior Court issued the following order in this case:

> THE COURT FINDS that it does not have subject matter jurisdiction over the plaintiff's complaint pursuant to Ind. Code § 34–58–2–1. Three civil actions filed by the plaintiff have been found to [sic] unable to proceed under Ind.Code § 34–58–1–2.
>
> THE COURT FINDS that the allegations contained in the plaintiff's complaint do not support a claim of immediate danger of serious bodily injury as defined by Ind.Code § 35–41–1–25.
>
> IT IS THEREFORE ORDERED that the plaintiff's complaint be dismissed with prejudice.

Appellant's App. p. 45. Smith, pro se, now appeals the dismissal of his complaint. We invited the Indiana Prosecuting Attorneys Council and the Public Defender of Indiana to appear as amicus curiae because of the ramifications of the constitutional issues presented in this case.[2]

### Discussion and Decision

This appeal concerns a host of statutes that the Indiana General Assembly enacted in 2004 to screen and limit civil actions filed by offenders. These five statutes— specifically, Indiana Code §§ 34–58–1–1 to –4 and Indiana Code § 34–58–2–1— apply to causes of action filed after June 30, 2004. P.L. 80–2004. These statutes are in direct response to the prolific offender litigation that has been occurring in our state courts and were designed to balance an offender's right to file a civil action with the heavy burden that those suits have placed on our judicial system.[3] We now turn to the key statutes.

Indiana Code § 34–58–1–1 provides, "Upon receipt of a complaint or petition filed by an offender, the court shall docket the case and take no further action until the court has conducted the review required by section 2 of this chapter." Section 2, in turn, provides in pertinent part:

> (a) A court shall review a complaint or petition filed by an offender and shall

---

**2.** We extend our heartfelt appreciation to both the Indiana Prosecuting Attorneys Council and the Public Defender of Indiana for accepting our invitation to submit briefs and for the quality of the briefs they submitted.

**3.** Our case law is replete with offenders who have inundated our judicial system with civil actions, such as Mario Sims, James H. Higgason, Larriante Sumbry, and Timothy Parks. *See, e.g., Sims v. Bramer*, 827 N.E.2d 1187 (Ind.Ct.App.2005) ("This court has become intimately acquainted with the 'plight' of Mario L. Sims since he was incarcerated in 1994 for raping his wife while threatening her with a loaded gun and a heroin-filled syringe. Since that time, he has inundated our judicial system with lawsuits against, among others, various public officials, his ex-wife, and her current husband. His abuse of the judicial system continues with this case."), *reh'g de-*

nied, *trans. denied; Higgason v. Stogsdill*, 818 N.E.2d 486, 488 (Ind.Ct.App.2004) (noting that Higgason has at least thirty-six separate appeals in this Court), *trans. denied; Sumbry v. Boklund*, 836 N.E.2d 430, 432 (Ind.2005) ("Every resource that courts have devoted to Sumbry's numerous civil proceedings is a resource denied to other legitimate cases with good-faith litigants."); *Sumbry v. Misc. Docket Sheet for Year 2003*, 811 N.E.2d 457, 461 (Ind.Ct.App.2004) ("[G]iven Sumbry's proclivity for continually filing frivolous and vexatious lawsuits, there will inevitably be future meritless petitions filed by him."), *trans. denied; Parks v. State*, 789 N.E.2d 40, 49 (Ind. Ct.App.2003) (noting that Parks engages in "endless rounds of meritless litigation, and our valuable judicial resources are spent . . . ."), *trans. denied.*

determine if the claim may proceed. A claim may not proceed if the court determines that the claim:

(1) is frivolous;

(2) is not a claim upon which relief may be granted; or

(3) seeks monetary relief from a defendant who is immune from liability for such relief.

(b) A claim is frivolous under subsection (a)(1) if the claim:

(1) is made primarily to harass a person; or

(2) lacks an arguable basis either in:

(A) law; or

(B) fact.

Ind.Code § 34–58–1–2. If a court determines that a claim may not proceed under section 2, the court shall enter an order explaining why the claim may not proceed and stating whether there are any remaining claims in the complaint or petition that may proceed. Ind.Code § 34–58–1–3. In addition, Indiana Code § 34–58–2–1 provides, "If an offender has filed at least three (3) civil actions in which a state court has dismissed the action or a claim under IC 34–58–1–2, the offender may not file a new complaint or petition unless a court determines that the offender is in immediate danger of serious bodily injury (as defined in IC 35–41–1–25)."

On appeal, Smith argues that the last of these sections—Indiana Code § 34–58–2–1—violates Article I, Sections 12 and 23 of the Indiana Constitution.[4] Before proceeding to Smith's constitutional challenges, we address some preliminary matters.

In dismissing Smith's claim, the Marion Superior Court relied upon the LaPorte Superior Court's order in *Smith v. Maximum Control Facility* that Smith was subject to the restriction contained in Indiana Code § 34–58–2–1. However, in *Smith v. Maximum Control Facility*, we reversed the trial court's imposition of this restriction because one of the three dismissals the trial court relied upon was improper. 850 N.E.2d at 479. Nevertheless, on November 7, 2006—the very same day that Smith filed his complaint in this case—the LaPorte Superior Court imposed the same restriction in yet another one of Smith's lawsuits, *Smith v. Huckins*, 850 N.E.2d 480 (Ind.Ct.App.2006), in which we also issued an opinion on July 13, 2006. In *Smith v. Huckins*, we affirmed the imposition of the restriction. *Id.* at 484–85. Even though we reversed the imposition of the restriction in *Smith v. Maximum Control Facility*, Smith nevertheless had three civil actions in which a state court had dismissed an action or claim pursuant to Indiana Code § 34–58–1–2 on the date that Smith filed his complaint in this case; therefore, Smith was still subject to the restriction contained in Indiana Code § 34–58–2–1.[5]

In addition, we note that the trial court dismissed Smith's complaint after the State of Indiana entered an appearance on

---

4. Smith also asserts a violation of Article I, Sections 1 and 10 of the Indiana Constitution, but we find these arguments waived for failure to present a cogent argument, including citation to authorities. *See* Ind. Appellate Rule 46(A)(8)(a).

5. We make one observation about the trial court's timing of the restriction in this case. Even though the restriction in *Smith v. Maximum Control Facility* was overturned on appeal, we find that the trial court was correct in imposing the restriction at that time. To hold otherwise would mean that a trial court could not impose the restriction until appellate review in the three cases relied upon was completed, which could take years. This would not further the legislative intent behind these statutes, which is to screen and limit civil actions filed by offenders.

behalf of the defendants and filed a motion to dismiss. However, Indiana Code § 34-58-1-1 contemplates that the trial court conducts a *sua sponte* review of an offender's complaint or petition promptly upon filing. This means that the court's review should occur *before* the defendant even has an opportunity to become involved in the case and to file a responsive pleading or any other dispositive motion. This prompt review is so that the defendant does not have to expend time and money on a meritless or frivolous case. The trial court most likely did not conduct a prompt review in this case because it was unaware that Smith was a prolific litigator who has had other complaints dismissed pursuant to Indiana Code § 34-58-1-2. As is shown by the four *Smith* cases we issued on July 13, 2006,[6] most of Smith's litigation occurs in LaPorte County, which is where the prison facility is located. Here, Smith filed his complaint in Marion County, and the State informed the court of Smith's litigious background in its motion to dismiss filed approximately five weeks later.[7] Despite the fact that the trial court dismissed Smith's complaint after the State filed a motion to dismiss, the standard of review is the same as if the court had dismissed the complaint after promptly reviewing it.

In *Smith v. Huckins*, we established, for the first time, the standard of review for a dismissal made pursuant to

Indiana Code § 34-58-1-2, under which a claim may not proceed if the trial court determines that it is frivolous, not a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from liability for such relief. 850 N.E.2d at 484. Here, however, the trial court dismissed Smith's complaint pursuant to Indiana Code § 34-58-2-1. Nevertheless, the same considerations that apply there also apply here. That is, if an offender has filed at least three civil actions in which a state court has dismissed the action or a claim under Indiana Code § 34-58-1-2, the offender may not file a new complaint or petition unless a court determines that he is in immediate danger of serious bodily injury. In determining whether the offender is in immediate danger of serious bodily injury, the trial court looks only to the offender's complaint and makes a legal conclusion. We therefore conclude that the dismissal of an offender's complaint pursuant to Indiana Code § 34-58-2-1 is a legal conclusion that is reviewed *de novo*. Like the trial court, we look only to the well-pleaded facts contained in the complaint or petition as well as the fact that a judicial record dismissing a case exists. We, as the trial court does, then determine whether three actions or claims have been dismissed and, if so, whether the offender's complaint establishes that he is in immediate danger of serious bodily injury.[8] We now turn to Smith's constitutional challenges.

---

6. *See Smith v. McKee*, 850 N.E.2d 471 (Ind.Ct. App.2006); *Smith v. Maximum Control Facility*, 850 N.E.2d 476 (Ind.Ct.App.2006); *Smith v. Carrasco*, 850 N.E.2d 468 (Ind.Ct.App. 2006); and *Smith v. Huckins*, 850 N.E.2d 480 (Ind.Ct.App.2006).

7. Indiana Code § 34-58-1-3 directs the trial court where to send an order that an offender's claim may not proceed. It identifies the following recipients: (1) the offender; (2) each defendant or respondent in the action; (3) the DOC, if the offender is incarcerated by the DOC; (4) the sheriff of the county in

which the inmate is incarcerated, if the inmate is incarcerated in a county or city jail; and (5) the Attorney General. Notably, this statute does not create a mechanism to inform trial courts in other counties that an offender's claim may not proceed. This lack of a central information system inevitably led to the late dismissal of the claim in the present case.

8. Although the trial court here concluded that it did not have subject matter jurisdiction over Smith's complaint, dismissals made pursuant to Indiana Code § 34-58-1-2 and

## I. Open Courts Clause

■ Smith first argues that the restriction contained in Indiana Code § 34–58–2–1—that is, if an offender has filed at least three civil actions in which a state court has dismissed the action or a claim, the offender may not file a new complaint or petition unless a court determines that he is in immediate danger of serious bodily injury—violates the Open Courts Clause of Article I, Section 12 of the Indiana Constitution and is therefore unconstitutional on its face.[9] Article I, Section 12 provides, "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Smith alleges that Article I, Section 12 " 'guarantees' Smith access to the court *no matter what.* " Appellant's Reply Br. p. 5 (emphasis added).

The Indiana Supreme Court explored the boundaries of the Open Courts Clause in the seminal case of *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999). There, our Supreme Court first observed, contrary to Smith's allegation in this appeal, that there is not a fundamental right of access to the courts or to bring a particular cause of action to remedy an asserted wrong. *Id.* at 1283; *see also Blanck v. Ind. Dep't of Corrections,* 829 N.E.2d 505, 511 (Ind. 2005). The court also determined that the legislature has the authority to modify or abrogate common law rights provided that such change does not interfere with constitutional rights. *Martin,* 711 N.E.2d at

1283. Finally, the court observed that it had upheld the medical malpractice statute of limitations in another case against a facial challenge that it was unconstitutional under Article I, Section 12, and, in so doing, it emphasized that, although the statute of limitations may limit the substantive right that gives rise to a claim, it does not abrogate the right to seek redress in court because the bar does not fall until a reasonable time for filing has expired. *Id.*

However, our Supreme Court acknowledged that there is a right of access to the courts and that the legislature cannot unreasonably deny citizens the right to exercise this right. *Id.* Similarly, the court reasoned that the legislature cannot deprive a person of a complete tort remedy arbitrarily and unreasonably, consistent with the protections Section 12 affords, and that legislation restricting such a right must be a rational means to achieve a legitimate legislative goal. *Id.*

No Indiana appellate court has addressed whether Indiana Code § 34–58–2–1 violates Article I, Section 12 of the Indiana Constitution; however, this Court has addressed a prisoner's right to bring a civil action under Article I, Section 12. For example, in *Murfitt v. Murfitt,* 809 N.E.2d 332 (Ind.Ct.App.2004), Murfitt's wife filed for divorce while he was incarcerated. Murfitt filed a motion for alternative means for conducting a hearing so that he could take part in the dissolution proceedings and protect his interests by presenting a claim regarding the distribu-

---

Indiana Code § 34–58–2–1 are not equivalent to a dismissal for lack of subject matter jurisdiction.

**9.** In *Clinic for Women, Inc. v. Brizzi,* 837 N.E.2d 973 (Ind.2005), the Indiana Supreme Court set forth the standard for facial challenges to the Indiana Constitution:

When a party claims that a statute is unconstitutional on its face, the claimant assumes the burden of demonstrating that there are no set of circumstances under which the statute can be constitutionally applied.

*Id.* at 980. The court observed that "[t]his is a heavy burden." *Id.*

tion of the marital property, but the trial court denied the motion. On appeal, this Court stated that we have "noted on several occasions the constitutional right of a prisoner to bring a civil action as provided by Article 1, Section 12 of the Indiana Constitution." *Id.* at 334. We further explained that implicit in the right to bring a civil action is the right to present one's claim to the trial court. *Id.* Because Murfitt was not given the opportunity to present any evidence or challenge his wife's credibility regarding the assets and debts that they had accumulated during marriage, we held that Murfitt's Article I, Section 12 rights were violated. *Id.* at 334–35; *see also Zimmerman v. Hanks,* 766 N.E.2d 752 (Ind.Ct.App.2002).

Although these cases are instructional, they are not entirely on point and therefore are not dispositive of the issue before us today. The obvious distinction is that Indiana Code § 34–58–2–1 does not abrogate the right of a prisoner to bring a civil action; rather, it acts as a limiting device. In this regard, the statute provides that after certain conditions have been met—three civil actions in which a state court has dismissed the action or a claim pursuant to Indiana Code § 34–58–1–2—the offender may not file a new complaint or petition unless a court determines that the offender is in immediate danger of serious bodily injury. An offender can bring as many civil actions as he wants, as long as three actions or claims have not been dismissed as being frivolous, not a claim upon which relief may be granted, or as seeking monetary relief from a defendant who is immune from liability for such relief. And even if three actions or claims have been dismissed pursuant to Indiana Code § 34–58–1–2, the offender can continue to bring civil actions as long as a court determines that he is in immediate danger of serious bodily injury. Although this undoubtedly acts as a limitation, it is very similar to a

statute of limitations, which has been held constitutional under the Open Courts Clause.

In *Martin,* our Supreme Court, relying on *Rohrabaugh v. Wagoner,* 274 Ind. 661, 413 N.E.2d 891 (1980), explained that although a statute of limitations may limit the substantive right that gives rise to a claim, it does not abrogate the right to seek redress in court because the bar does not fall until a reasonable time for filing has expired. *Martin,* 711 N.E.2d at 1283. In *Rohrabaugh,* our Supreme Court had said:

> A statute of limitation operates by barring a claim after the expiration of a period of time for asserting it. The bar is conceived as cutting off the availability of a remedy or in the alternative as limiting the substantive right which gives rise to a claim. Neither conception carries with it the idea that the bar infringes upon a fundamental right to seek redress in court. The statute does not prevent the timely prosecution in court of any claim. The bar does not fall until a reasonable time for filing has expired.

413 N.E.2d at 893 (internal citation omitted). Accordingly, the court held that the statute of limitations at issue did not violate the Open Courts Clause. *Id.*

Indiana Code § 34–58–2–1 works in a similar way by operating to bar a claim after three actions or claims have been dismissed and the offender is not in immediate danger of serious bodily injury. In other words—similar to a statute of limitations—Indiana Code § 34–58–2–1 limits the substantive right that gives rise to a claim. As a result, it does not infringe upon a fundamental right to seek redress in court, and—as long as the conditions have not been met—it does not prevent the prosecution of any claim. The State

has an interest in preserving valuable judicial and administrative resources. *See Parks v. Madison County,* 783 N.E.2d 711, 724 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* Given the General Assembly's balancing of an offender's right to bring a civil action with the heavy burden that those suits have placed on our judicial system, Indiana Code § 34–58–2–1 does not unreasonably deny offenders the right of access to the courts and is therefore facially constitutional under the Open Courts Clause. In addition, given the gravamen of Smith's complaint in this case—that he was injured after refusing to come down from a makeshift hammock tied to the ceiling—Indiana Code § 34–58–2–1 is constitutional as applied to him.

## II. Privileges and Immunities Clause

■ Smith also argues that Indiana Code § 34–58–2–1 violates the Privileges and Immunities Clause of Article I, Section 23 of the Indiana Constitution. Article I, Section 23 provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." The Indiana Supreme Court set forth the test for analyzing an Article I, Section 23 challenge in the watershed case of *Collins v. Day,* 644 N.E.2d 72 (Ind.1994). Specifically, our Supreme Court held:

> [W]e hold that Article 1, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Id.* at 80. Because of the substantial deference to legislative discretion, Collins requires that the challenger bear the burden "to negative every reasonable basis for the classification." *Id.* at 81.

On appeal, Smith asserts that Indiana Code § 34–58–2–1 "is a statute that only applies to prisoners, which means that a 'class of citizens'—the free members of society, are granted a privilege or immunity from such statute that 'shall not equally belong to all citizens.'" Appellant's Br. p. 12. *Collins* identified two types of Privileges and Immunities Clause claims—claims that seek to invalidate enactments that grant special privileges and claims that seek to impose special burdens. *Ind. High School Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 239–40 (Ind.1997), *reh'g denied.* Smith's claim falls into the latter category—offenders who have had three actions or claims dismissed by a state court pursuant to Indiana Code § 34–58–1–2 may not file a new complaint or petition unless a court determines they are in immediate danger of serious bodily injury. We find that Smith has not carried his burden to "negative every reasonable basis" for the burden of filing limitations for offenders.[10] *See Collins,* 644 N.E.2d at 81.

■■ Under *Collins,* we must determine whether there are inherent distinc-

---

**10.** The second requirement of the *Collins* analysis, that "any privileged classification must be open to any and all persons who share the inherent characteristics which distinguish and justify the classification," *Collins,* 644 N.E.2d at 79, is not likely to be violated where the claim is of a special burden, rather than a special privilege. *See Carlberg,* 694 N.E.2d at 240 n. 24. In any event, Smith claims no violation in this regard, and we find none.

tions between offenders who have had three or more civil actions dismissed and the general class of citizens that are reasonably related to imposing the filing limitations. *See Carlberg,* 694 N.E.2d at 240. We find the "reasonable relationship" test met for several reasons. First, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Montgomery v. Ind. Dep't of Correction,* 794 N.E.2d 1124, 1127 (Ind.Ct. App.2003) (quotation omitted), *reh'g denied, trans. denied.* Second, it is widely recognized that our legal system has been inundated with civil actions filed by offenders, many of which have been found to be frivolous or meritless. *See supra* note 3. Finally, the State has a legitimate interest in preserving valuable judicial and administrative resources. *See Parks,* 783 N.E.2d at 724. Legislative classification becomes a judicial question only where the lines drawn appear to be arbitrary or manifestly unreasonable. *Carlberg,* 694 N.E.2d at 240. So long as the classification is based upon substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature, and we will not inquire into the legislative motives prompting such classification. *Id.* Given the State's interest in conserving judicial and administrative resources and the fact that offenders have been abusing these resources, Indiana Code § 34–58–2–1 does not violate the Privileges and Immunities Clause.

We note that although Smith does not argue that Indiana Code § 34–58–2–1 violates the United States Constitution, in 1995, Congress enacted the Prison Litigation Reform Act, which contains statutes that are very similar to the ones the Indiana General Assembly enacted in 2004. Specifically, 28 U.S.C.A. § 1915A provides in pertinent part:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

>> (2) seeks monetary relief from a defendant who is immune from such relief.

This is similar to Indiana Code § 34–58–1–2, with one major exception. 28 U.S.C.A. § 1915A applies only to civil actions against governmental entities or officers or employees of governmental entities. Indiana Code § 34–58–1–2 does not contain any language that limits its application to civil actions against the State and its agencies and employees. Therefore, Indiana Code § 34–58–1–2 applies regardless of whether the defendant is the State (or its agencies or employees) or a private party.

In addition, 28 U.S.C.A. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section[11]

---

**11.** This section concerns proceedings *in forma pauperis.* Specifically, 28 U.S.C.A. 1915(b)(1) provides:

> Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in

forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any

if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

This subsection limits prisoners from bringing an action or appealing a judgment *in forma pauperis* if three actions or appeals have been dismissed on grounds that they are frivolous, malicious, or fail to state a claim upon which relief may be granted unless the prisoner is under imminent danger of serious physical injury. 28 U.S.C.A. § 1915(g) effectively precludes litigation altogether as most prisoners are indigent. *See Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir.1999) ("In reaching our conclusion, we recognize that some prisoners may be unable to prepay filing fees, and will thereby be unable to bring their actions immediately. However, non-prisoners face similar concerns. Some prisoners will be required to save money in order to prepay a filing fee and bring a claim. Again, non-prisoners face that same situation. Section 1915(g) does require prisoners to be fiscally responsible and make decisions concerning the merits of their case. If inmates are unwilling to save their money and prepay filing fees, such a decision may be a good indicator of the merits of the case. Courts would be well served by prisoners making such a decision before filing claims."). These provisions have consistently withstood constitutional scrutiny. *See, e.g., Higgins v. Carpenter*, 258 F.3d 797 (8th Cir.2001); *Singleton v. Smith*, 241 F.3d 534 (6th Cir. 2001); *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir.1998); *see also* Marjorie A. Shields, Annotation, *Validity and Construction of "Three Strikes" Rule Under 28 U.S.C.A. § 1915(g) Barring Prisoners from In Pauperis Filing of Civil Suit After Three Dismissals for Frivolity*, 168 A.L.R. Fed. 433, 2001 WL 257944 (2001 and Cum.Supp.).

Finally, Smith argues that even if we find Indiana Code § 34–58–2–1 constitutional, the trial court erred in dismissing his claim because the evidence shows that he "was not an abuser of litigation." Appellant's Br. p. 17. However, this is not the inquiry under Indiana Code § 34–58–2–1; rather, the inquiry is whether three actions or claims have been dismissed under Indiana Code § 34–58–1–2 and whether Smith is in immediate danger of serious bodily injury, which Smith does not even address on appeal.

In sum, we acknowledge that Indiana Code § 34–58–2–1 restricts the ability of offenders to bring civil actions. In *Parks v. Madison County*, we addressed Indiana

---

court fees required by law, an initial partial filing fee of 20 percent of the greater of—
    (A) the average monthly deposits to the prisoner's account; or
    (B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.
Subsection (a)(1), in turn, provides:
    Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

On appeal, Smith makes an argument about a partial filing fee, but this language only appears in the federal statute. Therefore, we do not address this issue in relation to our state statute.

Code § 35–50–6–5(a)(4), which provides that a person may be deprived of credit time if a court determines that a civil claim brought by the person in a state or an administrative court is frivolous, unreasonable, or groundless. We then made the following observation, which we find equally applicable here:

> Were there no cost to society for such frivolous suits, there would be no need to discourage them. There is, however, a substantial cost. Meritless lawsuits consume valuable judicial, administrative, and law enforcement resources in the same measure and manner as do their counterparts that have some merit. I.C. § 35–50–6–5(a)(4) is intended to help preserve those resources by apprising incarcerated, pro se appellants that there is a possible down-side to the decision to litigate. The statute reflects the reality that such determinations are of a kind that someone with formal legal training is better equipped to make.

*Parks*, 783 N.E.2d at 724 n. 2. By giving offenders three chances before they are restricted from bringing more complaints or petitions, Indiana Code § 34–58–2–1 merely forces offenders to be fiscally responsible and to pick and choose the lawsuits that they bring. We therefore affirm the dismissal of Smith's complaint.

Affirmed.

ROBB, J., and MATHIAS, J., concur.